UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| TINA MARIE SMITH, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:10-cv-1076 |
| ) | |
| v. ) | Honorable Janet T. Neff |
| ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Defendant. ) | |
| _____) | |

      This is a social security action brought under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claim for disability insurance benefits (DIB). On January 4, 2007, plaintiff filed her application for benefits alleging an October 15, 2005 onset of disability. (A.R. 115-17). Her claim was denied on initial review. On June 24, 2009, she received a hearing before an administrative law judge (ALJ), at which she was represented by counsel. (A.R. 30-85). On August 14, 2009, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 15-25). On September 1, 2010, the Appeals Council denied review (A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

      On November 2, 2010, plaintiff filed her complaint seeking judicial review of the Commissioner's decision denying her claim for DIB benefits. Plaintiff asks the court to overturn the Commissioner's decision on the following grounds:

      DESPITE LACK OF THE "INCONSISTENCY" WITH THE OTHER SUBSTANTIAL EVIDENCE REQUIRED BY THE PAIN REGULATION, THE ALJ REJECTED PLAINTIFF'S REPORTED

      1.        UPPER EXTREMITY LIMITATIONS[;]
      2.        FATIGUE SEVERE ENOUGH TO CAUSE HER TO LIE DOWN DURING THE DAY [;] AND
      3.        DAILY PANIC ATTACKS.

(Statement of Errors, Plf. Brief at 2, docket # 13). Upon review, I recommend that the Commissioner's decision be affirmed.

## **Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of

whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003).

### Discussion

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from October 15, 2005, through the date of the ALJ's decision. (A.R. 17). Plaintiff had not engaged in substantial gainful activity on or after October 15, 2005. (A.R. 17). Plaintiff had the following severe impairments: "adrenal and pituitary disorders, thoracic spine T11-T12 disc annular tear without nerve compression, cervical degenerative disc disease, depression, and anxiety." (A.R. 17). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 19). She retained the residual functional capacity (RFC) for a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than a full range of light work (20 C.F.R. 404.1567(b)). She can lift 20 pounds occasionally and 10 pounds frequently; be on her feet no more than two hours total during an eight-hour workday; never climb ladders, ropes or scaffolds; occasionally climb ramps, stairs, balance, stoop, kneel, crouch and crawl; perform work with an "at will" sit-stand option. She has the limitation to do no more than semiskilled, Specific Vocational Preparation (SVP) 3 to 4 level tasks. She can maintain attention and concentration necessary to work up to two-hour periods accompanied by

>    normal breaks and lunch during an eight-hour workday.  She can do structured work and would be anticipated to be absent or tardy one time every other month.  She can occasionally interact with the general public, coworkers, and supervisors as long as she has no close, critical supervision.

(A.R. 20).  The ALJ found that plaintiff's testimony regarding her subjective limitations was not fully credible.  (A.R. 21-24).  The ALJ found that plaintiff was not disabled at step 4 of the sequential analysis because she was capable of performing her past relevant work as an administrative assistant as that job is generally performed.  (A.R. 24-25).

The only challenge to the ALJ's decision raised in plaintiff's brief is that the ALJ failed to give full credence to her subjective complaints.  Plaintiff argues that under 20 C.F.R. § 404.1529, the ALJ was required to credit her testimony claiming that:  (1) she suffered from disabling fatigue, (2) she could not raise her arms enough to drive a car or use her hands for more than fifteen minutes, and (3) she experienced daily panic attacks. (Plf. Brief at 13-17; Reply Brief at 2-5).  I find that plaintiff's challenge to the ALJ's factual finding regarding her credibility does not provide a basis for disturbing the Commissioner's decision.

Nothing in the social security regulations guarantees a claimant for social security benefits that her testimony regarding her subjective functional limitations will be accepted by the ALJ as credible.  Section 404.1529(c)(3) states that all the available evidence will be considered in evaluating the intensity and persistence of the claimant's symptoms.  20 C.F.R. § 404.1529(c)(3). Section 404.1529(c)(4) states that all of the available evidence will be considered in determining the extent to which the claimant's symptoms, such as pain, affect the claimant's capacity to perform basic work activities.  20 C.F.R. § 404.1529(c)(4).  "Your symptoms, including pain, will be determined to diminish your capacity for basic work activities to the extent that your alleged

functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4).

The ALJ is not required to accept the testimony of any witness, including plaintiff. *See Jones v. Commissioner*, 336 F.3d at 476; *see also Sullenger v. Commissioner*, 255 F. App'x 988, 995 (6th Cir. 2007) ("The ALJ is the [u]ltimate [d]ecider of [c]redibility."). "An ALJ is in the best position to observe witnesses' demeanor and to make an appropriate evaluation of their credibility. Therefore an ALJ's credibility assessment will not be disturbed absent compelling reason." *Reynolds v. Commissioner*, 424 F. App'x 411, 417 (6th Cir. 2011) (citation omitted); *see Norris v. Commissioner*, No. 11-5424, 2012 WL 372986, at * 5 (6th Cir. Feb. 7, 2012) ("Because a reasonable mind might accept the evidence as adequate to support an adverse-credibility determination, we conclude that substantial evidence supports the ALJ's finding."). The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528.

The Sixth Circuit recognizes that meaningful appellate review requires more than a blanket assertion by an ALJ that "the claimant is not believable." *Rogers v. Commissioner*, 486 F.3d 234, 248 (6th Cir. 2007). The *Rogers* court observed that Social Security Ruling 96-7p requires that the ALJ explain his credibility determination and that the explanation "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers*, 486 F.3d at 248. The ALJ's factual finding regarding plaintiff's credibility easily withstands scrutiny under these standards.

The ALJ provided a lengthy and detailed explanation why he found that plaintiff's testimony regarding her subjective limitations was not fully credible:

The claimant testified that since January 2006 she has required an assistive device to stand and since mid-summer 2006 has needed a wheelchair to get around. She admitted that the wheelchair has not been prescribed for her. During a typical day she tries to rest as much as she can and follows a very strict diet involving only fruits, vegetables, water, and tea. She stated that she cannot be near a stove for fear that she might fall into it. She continues to have episodes when [her] body shuts down as though she has run a marathon. She depends on her husband to assist her with her personal needs and to provide transportation for her. She reported that she does some typing of emails and data entry for her spouse's papers, although on a limited basis.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment. Specifically, the claimant's allegations concerning her intense fatigue and need to lie down during the day are not consistent with the overall evidence of record.

The claimant made a rather bizarre presentation at the hearing. She was in a wheelchair and shivered in the chair to the point her husband, who appeared extremely attentive to his wife's perceived needs, brought in a blanket to cover her shoulders.

The claimant has no medically determinable physical impairment to account for her unusual alleged symptoms and limitations. While she has cervical and thoracic impairments, no physician of record has associated those impairments with the claimant's unusual allegations. (Exhibit 3F, 4F/5)[A.R. 255-378, 383]. A May 2005 MRI, additionally, revealed no anatomic abnormality in the cervical region to account [for] the claimant's purported left upper extremity radicular symptoms (Exhibit 7F/22-23)[A.R. 447-48].

University of Michigan neurologists determined in April 2007 that the claimant had no evidence of an organic neurological disorder. It was suggested that the claimant had a psychiatric component to her presentation inasmuch as her ataxic gait and poor balance were inconsistent with her normal deep tendon reflexes and neurological examination (Exhibit 14F/2, 3)[A.R. 556-57]. Dr. Gilman specifically informed the claimant and her husband that she had a normally functioning nervous system and that there was no organic cause for her symptomatology. She was told that her perceived symptoms were related to a psychiatric disorder that appeared to include depression and anxiety. She was advised that she should again have treatment with a psychiatrist and a psychotherapist (Exhibit 13F/5)[A.R. 554].

The claimant testified that she is prescribed Xanax for anxiety and that she also takes a variety of natural supplements. There is no indication that she has any side effects from her medication usage.

The reports of the treating medical sources support a conclusion that the claimant has good control over her anxiety symptoms when she takes her prescribed medications as directed. Mary R. Clifton, M.D., of the Munson Medical Center Pain Clinic, has stated that the claimant has had excellent control of her anxiety and depression when she takes her medication (Exhibit 7F/2)[A.R. 427]. The claimant, moreover, has had good response to her pain symptoms with an electrical nerve stimulator and epidural injections (Exhibit 7F/35)[A.R. 460].

It appears that the claimant is not always compliant with her medication regimen and, indeed, has a history of noncompliance with medical care and medication usage, choosing in many instances to substitute her judgment over that of her treating physicians. As mentioned above, she self-discontinued the Remeron (Exhibit 13F/3)[A.R. 552]. In February 2006 Dr. Clifton commented that the claimant's discontinuation of many of her psychiatric medications (including Xanax and Remeron) without physician recommendation, likely led to some of her symptoms (Exhibit 3F/13)[A.R. 266]. Dr. Clifton has reported that the claimant refuses to stay on medication for any length of time. The doctor has noted that the claimant has had good control of her symptoms when she has been compliant with her medication regimen (Exhibit 7F/2)[A.R. 427].

Various third-party individuals have commented about the claimant's condition. The claimant's spouse testified that he travels a good deal for his employer and that his wife goes with him all the time. He makes sure that their motel room is handicap accessible. He also stated that he assists his wife with her shower needs. Ms. Johnson, the claimant's friend, also testified that in 2006 she was appalled by the claimant's appearance. She asserted that all of the claimant's testimony was true. The undersigned further notes that Cathy Machulan, D.C., has also stated that the claimant can do no work.

The undersigned has considered these third-party observations in view of 20 CFR 404.1527 and SSRs 06-3p. Although a medically justifiable reason has not been established, it appears that the claimant has altered her activities as stated by the claimant's husband and friend. While the undersigned has considered the witnesses' statements, those comments do not comprise the determining factor in the ultimate decision of whether the claimant is or is not disabled. Ms. Machulan's conclusions are from a source which is not "an acceptable medical source" under the regulations. The undersigned is persuaded by the objective medical findings, the comments of the acceptable medical sources, the claimant's treatment regimen, and her prescribed medication usage to conclude that the claimant is not as limited as has been suggested. The undersigned, therefore, does not give significant weight to the witnesses' comments.

In March 2007 Robert Colt, M.D., a physician who saw the claimant in February and March 2007, offered the opinion that the claimant could never lift more than 10 pounds. The doctor also recommended that the claimant never use her extremities for repetitive action such as

simple grasping, reaching, pushing or pulling, fine manipulation, and operating foot and leg controls (Exhibit 10F)[A.R. 539-40].

Notably, Dr. Colt, an emergency room specialist, only saw the claimant on a limited basis at the Munson Medical Center. Dr. Colt's assessment conflicts with the statements of Dr. Clifton, a treating medical source and a specialist in pain control, who has stated that when the claimant takes her medications as prescribed, her symptoms are controlled. Dr. Colt's comments are also not consistent with those of Dr. Gilman, a neurologist who did extensive testing and who has reported that the claimant has no physical basis for her symptoms. Indeed, Dr. Colt has recorded that the claimant's deep tendon reflexes were normal and noted that other neurological tests were variable, which suggests a certain degree of inconsistency in the claimant's presentation. Because of the comments of Drs. Clifton and Gilman and the variable nature described of the claimant's objective findings, I do not give significant weight to Dr. Colt's assessment.

A State agency medical consultant assessed that on a physical basis the claimant would be capable of performing a limited range of light work. The State agency medical consultant determined that the claimant could frequently lift and/or carry 25 pounds; stand and/or walk about six hours in an eight-hour workday; sit about six hours in an eight-hour workday; and do unlimited pushing and/or pulling (Exhibit 11F)[A.R. 541-48].

The objective medical findings concerning the claimant's medically determinable cervical and thoracic impairments support the State agency medical consultant's conclusion that the claimant would be incapable of more than light exertional level lifting. Although the State agency reviewer found that the claimant could lift and/or carry 25 pounds, the undersigned will find that the claimant can lift 20 pounds occasionally and 10 pounds frequently consistent with the definition of light work. The medical reports, particularly the comments of Dr. Clifton, disclose, however, that the claimant cannot do the entire range of light work as the State agency reviewer has determined. The undersigned finds, accordingly, that the claimant can be on her feet no more than two hours total during an eight-hour workday; never climb ladders, ropes, or scaffolds; and occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She is capable of performing work of a sit-stand option.

The claimant's treating psychiatrist from October 21, 2005 through March 8, 2006 lists no residual functional capacity or limitations. The psychiatrist related only that as of March 8, 2006 the claimant had made some progress toward her goals but remained frustrated with her medical condition and continued discomfort (Exhibit 2F)[A.R. 253].

A State agency psychological consultant has observed that the claimant's understanding and memory are mildly to moderately impaired, that her sustained concentration and persistence are moderately limited, and that her social interaction and adaptation are mildly to moderately reduced. The State agency psychologist has assessed that the claimant is capable of simple one and two-step tasks. Her psychological limitations do not appear to interfere

> with work activities that are simple in nature. In addition, the State agency consultant concluded that the claimant could function effectively in small familial groups or by working alone and that she retained the capacity to perform simple tasks on a sustained basis (Exhibit 16F)[A.R. 572-75].
>
> The State agency opinion set forth in Exhibit 16F is supported by the overall evidence of record. The undersigned concludes, therefore, that based on the State agency opinion the claimant has the limitation to do no more than semiskilled, Specific Vocational Preparation (SVP) 3 to 4 level tasks. She can maintain the attention and concentration necessary to work up to two-hour periods accompanied by normal breaks and lunch during an eight-hour workday. She can do structured work and would be anticipated to be absent or tardy one time every other month. She can occasionally interact with the general public, coworkers, and supervisors as long as she has no close, critical supervision.

(A.R. 21-24). The ALJ noted that no physician had prescribed use of a wheelchair. The ALJ gave significant weight to the opinions of Sid Gilman, M.D., a professor at the University of Michigan Department of Neurology, who found that plaintiff's nervous system was normal and that there was no organic cause for her reported symptomatology. The lack of objective medical evidence supporting plaintiff's alleged functional limitations was an appropriate consideration in evaluating her credibility. *See Tyra v. Secretary of Health & Human Servs.*, 896 F.2d 1024, 1030 (6th Cir. 1990). The ALJ gave significant weight to the opinions of plaintiff's treating physician and pain specialist, Mary R. Clifton, M.D., who reported that plaintiff had excellent control of her anxiety and depression when she was compliant in taking her medication.[1] Plaintiff's failure to follow prescribed treatment undercut the credibility of her testimony regarding her subjective functional limitations. *See Sias v. Secretary of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988). I find that the ALJ correctly applied the law and that his factual finding regarding plaintiff's credibility is supported by more than substantial evidence.

---

[1] The ALJ could have easily denied this claim based on plaintiff's documented failure to follow prescribed treatment. Section 404.1530(b) states: "If you do not follow your prescribed treatment without a good reason, we will not find you disabled . . . ." 20 C.F.R. § 404.1530(b).

**Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.


Dated: March 7, 2012                /s/ Joseph G. Scoville
                                    United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).